LINK: 18

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** |
|---|---|

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS)

## ORDER ON MOTION TO DISMISS

Before the Court is a Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants NBC Universal Media, LLC, Open 4 Business Productions, LLC and American Work, Inc.'s (collectively "Defendants").  Plaintiff DuckHole, Inc., filed its Opposition on May 20, 2013. (Dkt. No. 18.) Defendants filed their Reply on July 1, 2013. (Dkt. No. 21.)

After considering the arguments in the moving and opposing papers and the points articulated during oral argument, the Court **GRANTS** Defendants' Motion to Dismiss the FAC in its entirety **WITH PREJUDICE**.

### I. Background

#### A. The Parties

Plaintiff DuckHole, Inc., ("Plaintiff") is assigned the registration rights of treatment for a television show entitled *PETS* ("*PETS*"). (Dkt. No. 6 ¶ 9.) Defendants include NBC Universal Media, LLC, Open 4 Business Productions, LLC and American Work, Inc. (Dkt. No. 6 ¶¶ 2-4.)

Plaintiff alleges that Defendants infringed its copyrighted work *PETS* with the development and production of their show *Animal Practice* in violation of the Copyright Act, 17 U.S.C. § 1 *et. seq.* (Dkt. No. 6 ¶ 9.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

### B. *PETS*

Paul J. Andre ("Andre") created *PETS* in 2010 and registered the treatment with the Writers Guild of America ("WGA") on December 12, 2010. (Dkt. No. 6 ¶ 10.) Following WGA registration, Andre assigned all rights in *PETS* to Plaintiff. (Dkt. No. 6 ¶ 10.) On October 7, 2012, Plaintiff registered *PETS* with the United States Copyright Office. (Dkt. No. 6 ¶ 10; Dkt. No. 13-1.) Andre's seven-page treatment includes a plot summary, character list, and compilation of episode ideas, but it does not include a script or example of dialogue. (Dkt. No. 18-2, Ex. A.)

In the FAC, Plaintiff describes *PETS* as a sitcom set in a city-owned after hours veterinarian clinic that is "focused on a brilliant veterinarian who 'prefers the company of animals to people.'" (Dkt. No. 13-1 at 4; Dkt. No. 6 ¶ 11.) In *PETS*, the lead veterinarian, Dr. Claire Weber ("Dr. Weber") develops a romantic love interest in Michael Young ("Young"), a down and out lawyer who knows very little about animals. (Dkt. No. 6 ¶ 11; Dkt. No. 13-1 at 3.) Dr. Weber and Young have a dynamic mirroring that of Sam and Diane on *Cheers*. (Dkt. No. 13-1 at 3.) During an emergency visit to the clinic for his girlfriend's cat, Young develops an idea to begin offering legal services to clinic pet owners. (Dkt. No. 13-1 at 3.) As a result Young spends a significant amount of time in the clinic. (Dkt. No. 13-1 at 3.)

Other characters in the "treatment" include: (1) David Cooper, a veterinarian assistant and Dr. Weber's best friend, (2) Peg Brennan, the receptionist who is difficult to work with and has a "biting sense of humor," (3) Alex Ruiz, "a brilliant Hispanic college student working his way through college as a maintenance worker/janitor at the clinic," (4) Brenda Harrison, a pretty, "sweet, but not so bright, administrative assistant" who wears provocative clothing, and (5) Bud, Claire's dog and the clinic's "resident pet." (Dkt. No. 13-1 at 4-5.) Ultimately, the pets are meant to be the "real stars of the show." (Dkt. No. 6 ¶ 14.)

Set locations would include the clinic lobby, the examining room, Dr. Weber's veterinarian office, Young's legal office, and a courtroom. (Dkt. No. 13-1 at 5-6.) *PETS* included a brief summary of episode ideas, including "a Halloween contest for pets at the clinic, and an issue about a pet eating chocolate." (Dkt. No. 6 ¶15.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

Plaintiff alleges that *Animal Practice* stole the show concept of "a veterinarian that is good with animals but not so good with people." (Dkt. No. 6 ¶ 11.) Additionally, Plaintiff alleges that the show stole the set locations for the series, several of the character descriptions, and a few of the episode ideas. (Dkt. No. 6 ¶ 11.) Plaintiff avers that individuals associated with *Animal Practice*, including producers, had access to the copyright protected content in the *PETS* treatment either directly or indirectly thought Greg Malins and/or his representatives. (Dkt. No. 6 ¶ 16.)

### C. *Animal Practice*

Defendants are the producers and distributor of the television series *Animal Practice*, initially broadcast on NBC in 2012. (Dkt. No. 6 ¶ 9.) *Animal Practice* was a sitcom consisting of half-hour weekly episodes with an ensemble cast. (Dkt. No. 12 at 5.) NBC broadcast the show for seven episodes in the fall of 2012 before it cancelled the series. (Dkt. No. 12 at 5.)

The show depicted day-to-day life at Crane Animal Hospital, a fictional "privately-owned upscale animal hospital in New York City." (Dkt. No. 12 at 5.) The scenes are largely set inside the hospital lobby, operating room, break room, offices. (Dkt. No. 12 at 6.) Some scenes take place at a nearby Chinese Restaurant and a local park. (Dkt. No. 12 at 6.)

The main character, Dr. George Coleman ("Dr. Coleman") served as the chief surgeon and administrator for Crane Animal Hospital. In the pilot episode, Dr. Coleman learns that the hospital has been inherited by his ex-girlfriend, Dorothy Crane ("Crane"). (Dkt. No. 12 at 5.) Crane becomes the hospital administrator and throughout the seven episodes works to improve the hospital and befriend the staff. (Dkt. No. 12 at 5.) Crane proves to be a more apt manager for the hospital. (Dkt. No. 12 at 5.) Dr. Coleman's ability to manage was hindered by his signature disdain for pet owners. (Dkt. No. 12 at 5.) Because of their dating history, Crane and Dr. Coleman struggle to establish a professional working relationship. (Dkt. No. 12 at 5.)

The other characters in *Animal Practice* include: (1) Dr. Doug Jackson ("Dr. Jackson"), a veterinarian who is George's best friend; (2) Dr. Yamamoto, a goofy veterinarian who lacks self-confidence in his personal life; (3) Juanita, a friendly take-charge nurse who is well-liked by her co-workers; (4) Angela, a veterinary assistant who

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

has a parole officer and is crudely funny, (5) Dr. Rizzo, Dr. Coleman's capuchin monkey who wears medical clothing, and has human characteristics. (Dkt. No 12 at 6.)

Plot developments in the show included the surgery of Dr. Jackson's dog, the discovery that Dr. Rizzo can paint, the introduction of a new surgeon who is poised to take Dr. Coleman's job, the surgery of Mayor Bloomberg's dog, and a Halloween costume competition. (Dkt. No. 12 at 7-8.)

### D. Requested Relief

Plaintiff alleges that it is entitled to recover actual damages as a result of the infringement pursuant to 17 U.S.C. § 504. (Dkt. No. 6 ¶ 20.) In addition, Plaintiff seeks statutory and exemplary damages for Defendants' "willful" infringement of Plaintiff's copyrighted works pursuant to 17 U.S.C. § 504(c)(2). (Dkt. No. 6 ¶ 20.) Finally, Plaintiff alleges that it "is entitled to injunctive relief pursuant to 17 U.S.C. § 502, "an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503," and "attorneys' fees and costs of suit" pursuant to 17 U.S.C. § 505. (Dkt. No. 6 ¶ 21-22.)

Defendants filed this Motion to Dismiss on April 17, 2013, arguing that the *PETS* treatment is not "substantially similar" to *Animal Practice*. (Dkt. No 12.)

## II. Procedural History

Plaintiff filed a First Amended Complaint ("FAC") on January 14, 2013. (Dkt. No. 6.) Defendants filed a Motion to Dismiss Plaintiff's FAC on April 14, 2013. (Dkt. No. 12.) With the Motion, Defendants filed a Request for Judicial Notice. (Dkt. No. 13.) Plaintiff filed its Opposition on May 20, 2013. (Dkt. No. 18.) Defendants filed their Reply on July 1, 2013. (Dkt. No. 21.)

## III. Judicial Notice

Federal Rule of Evidence 201 empowers a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed.R.Evid. 201(d); *Mullis v. U. S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 n. 9 (9th Cir.1987). According to Federal Rule of Evidence 201, the Court "*must* take judicial notice if a party requests it and supplies the court with the necessary information." Fed. R. Evid. 201(c)(2).

In ruling on the Motion to Dismiss, the Court cannot generally "consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) (citation omitted). The Court may consider exhibits submitted with the FAC and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Kennedy v. Paramount Pictures Corp.*, 12CV372-WQH-WMC, 2013 WL 1285109 (S.D. Cal. Mar. 27, 2013) (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir.1998) (quotation marks omitted).

Defendant requested judicial notice from the Court for (1) the content of *Animal Practice* from the DVDs lodged with the Court of the seven episodes aired, (2) the content of Plaintiff's treatment for *PETS*, (3) Plaintiff's registration with the U.S. Copyright Office for *PETS* on October 7, 2012, and (4) the common elements of veterinary hospitals. (Dkt. No. 13.) As detailed below, Defendant's requests are granted.

### A. The Seven Episodes of *Animal Practice* and the *PETS* Treatment

Under the doctrine of incorporation by reference, the works are properly before the Court. Plaintiff references the treatment and the content and specific episodes of *Animal Practice* in the FAC. The two works form the basis of Plaintiff's claim of copyright infringement, therefore "the Court may properly consider the content of the show as documentary facts whose contents are alleged in [the] Complaint." *Zella*, 529 F.Supp. at 1128 (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994)) (internal quotation marks and citation omitted).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

Plaintiff has not objected to the authenticity of the episodes, and in fact discusses them at length in the Opposition. Additionally, Plaintiff appended the same copy of the treatment to its Opposition. (Dkt. No. 18-2, Ex. A.)

### B. The Copyright Registration

The request for judicial notice of Plaintiff's copyright registration is granted as it is common practice for courts to take judicial notice of copyright registrations. *See e.g.*, *Warren v. Fox Family Worldwide, Inc.* 171 F. Supp. 2d 1057, 1062 (C.D. Cal 2001) (granting judicial notice of a copyright registration certificate because it is the type of document a court may judicially notice under Rule 201(b)(2)). Plaintiff's copyright registration can be easily authenticated and is capable of accurate and ready determination within the meaning of Rule 201(b)(2).

### C. Elements Common to Veterinary Hospitals

Defendants also ask the Court to judicially notice "the common elements of veterinary hospitals and sitcoms discussed in Motion." (Dkt. No. 13 at 3.) The Court takes judicial notice of the common elements of a veterinary hospital which include the setting that contains an operating room, examining room, a lobby, and pets. With regard to the other sitcoms referenced, the Court takes judicial notice of the tone that is common to comedic television shows, and plot ideas such as romantic relationships that are prevalent on comedic television shows. These elements "are generally known and can be verified simply by watching television for any length of time." *See Zella*, 529 F.Supp. at 1124 (granting Defendant's request for judicial notice that certain elements of a "television show are common and prevalent in public works" including the following: "(a) a host; (b) guest celebrities, (c) an interview; and (d) a cooking segment").

### IV. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: (1) first, discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, (2) determine "whether they plausibly give rise to entitlement to relief." *Id.* at 664; *see also Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *see also*, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Courts may "consider ... matters of judicial notice without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pac. Police Depot,* 901 F.2d 696, 699 (9th Cir.1990). Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

**V. Discussion**

The Ninth Circuit has long held that non-infringement can be determined on a motion to dismiss. If "the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945);

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

*see, e.g., Zella,* 529 F.Supp.2d at 1130 ("For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint."); *Kennedy v. Paramount Pictures Corp.*, 12CV372-WQH-WMC, 2013 WL 1285109 (S.D. Cal. Mar. 27, 2013) (granting a plaintiff's motion to dismiss because a copyrighted work was not substantially similar to defendant's depiction of characters, plot, and themes in Titanic.)

Plaintiff must allege both the "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original" in order to state a claim for Copyright Infringement. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).

### A. Ownership

Defendants have presented Plaintiff's valid copyright registration from October 7, 2012. (Dkt. No. 13-2.) As such, the Court will turn its attention to the second requirement, copying.

### B. Copying

There is rarely evidence of copying, but Plaintiff may establish copying with indirect evidence. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). To support an inference that copying took place, Plaintiff must demonstrate "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir.2002).

#### 1. Access

Plaintiff has alleged only minimal facts to demonstrate that Defendants were exposed to Plaintiff's work. "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.,* 581 F.3d 1138, 1143 (9th Cir.2009) (internal citation omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

While this is something that could be cured through discovery, further discussion is unnecessary because the Court finds that the two works are not substantially similar. *See Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Circuit) ("No amount of proof of access will suffice to show copying if there are no similarities."), *superseded on other ground by* 17 U.S.C. § 504(b).

### 2. Substantial Similarity

"The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas." *Feist*, 499 U.S. at 344-45. While ideas are not protectable, expressions that include "specific details of an author's rendering of ideas," are protectable. *Funky Films*, 462 F.3d 1072, 1077 (9th Cir. 2006). A show about an animal hospital is itself too generic to be protectable. *See Id*. at 1801 (holding that there was no protection for similar plots involving "the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business"). Additionally, the Court finds that the elements alleged by Plaintiff are too generic to be protectable and are *scenes a faire* flowing from an animal hospital.

"The substantial-similarity test contains an extrinsic and intrinsic component." *Id.* at 1077. The Court applies the "extrinsic test," an objective test based on specific expressive elements.[1] *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620 (9th Cir. 2010). "In applying the extrinsic test, [the] court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Funky Films, Inc.,* 462 F.3d at 1077. (quotation omitted). Sequences of events that "flow naturally from generic plot-lines," called *scenes a faire* are not protectable. *Id.* at 1077.

The Court "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works, and court must take care to inquire only whether the protectable elements, standing alone, are substantially

---

[1] In contrast, "intrinsic test" is a subjective test that is "the exclusive province of the jury." *Benay*, 607 F.3d at 620. The "intrinsic test" requires juries to "focus[] on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works." *Id*.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

similar." *Benay*, 607 F.3d at 624 (affirming court's decision that the works were not substantially similar though they shared many details such as, identical titles, and a historically unfounded premise of an American war veteran going to Japan to train the Imperial Army). After assessing the articulable similarities between *PETS* and *Animal Practice*, the Court finds that the two works are not substantially similar.

### i. Plot and Sequence of Events

"Plot is defined at the sequence of events by which the author-expresses his theme or idea." *Zella*, 529 F. Supp. 2d at 1135 (quotation marks omitted). Plaintiff alleges that both shows revolve around animals, and that both *PETS* and *Animal Practice* boast that the animals are the "real stars."

*PETS* and *Animal Practice* have distinct plots, demonstrating that they are wholly different expressions of the same idea. There is no similarity, much less substantial similarity, between any expressive elements in the works. In *PETS*, the characters work in an after-hours clinic set in Los Angeles that is always strapped for cash. (Dkt. No. 13-1 at 4.) The main character is a veterinarian who runs a non-profit during the day. (Dkt. No. 13-1. at 4.) The episodes interweave clinic scenes with courtroom scenes, describing the how the pets were injured. (Dkt. No. 13-1 at 7.) In *Animal Practice*, the characters practice in the heart of New York City. (Dkt. No. 12 at 5.) Crane hospital caters to the wealthiest and most prosperous members of society, such as Michael Bloomberg. (Dkt. No. 12 at 5-6.) While the pets in *Animal Practice* are a key component of the television show, many of its storylines focus on the personal lives of the owners and the hospital staff. The stock elements of pets, a hospital staff, pet owners and the interactions between the three can be characterized as unprotected *scenes a faire*. The commonalities between the situations and incidents in the two works "flow naturally from [the] basic plot premise" of a television show about an animal hospital. *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985).

There are two similar story fragments. The Court, however, agrees with Defendant that "a Halloween costume contest for pets at the clinic, and an issue about a pet eating chocolate," do not provide a basis for substantial similarity. (Dkt. No. 6 ¶ 15.) *Animal Practice* is unique in its expressive details of these two story ideas.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

### ii. Themes

The Ninth Circuit has warned courts against finding "substantial similarity" when a Plaintiff "emphasizes random similarities scattered throughout the works." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356-1357. Copying a particular sequence of unprotectable elements can be considered infringement if there are a significant number of elements strung together. *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Circuit 2002) ("Each note on a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.") (emphasis added).

Individually, the themes identified by Plaintiff are too generic to be protectable elements. Additionally, when strung together, the Court finds there are not a significant number of unprotectable elements in a similar sequence. Plaintiff charges that the following themes indicate that there is a substantial similarity, "(1) sexual tension between Claire and Michael, (2) Claire's interaction with pets and their owners, (3) David's ineptitude at dating/a social life, (4) the interaction between Michael and owners in the clinic lobby, (5) Peg's constant insults toward David and Brenda, (6) Brenda's clueless sexual behavior." (Dkt. No 18 at 11-12.) Some of these recurring sub-themes in *PETS* can be found in *Animal Practice*, but they are also common to other comedic shows. Further, the theme similarities are randomly scattered throughout the works.

### iii. Setting

In *Williams*, the Court held that "electrified fences, automated tours, dinosaur nurseries, and uniformed workers" amongst other things were "classic *scenes-a-faire* that flow[] from the uncopyrightable concept of a dinosaur zoo." *Williams*, 84 F.3d at 589. Similarly, the setting locations including a lobby, an examining room, and a veterinary office are *scenes a faire* flowing from the uncopyrightable concept of a television show about an animal hospital.

### 1. Mood, Pace, and Dialogue

In *Rice v. Fox Broad. Co.*, the court held that a show could not protect the overall mood of secrecy from a basic plot idea of a show about revealing magic tricks. 330 F.3d 1170, 1177 (9th Circuit). Similarly, the Court finds that the similarities in the mood and of

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

*Animal Practice* and *PETS* are common to sitcoms with ensemble cast. Therefore they are not protectable elements that can be used to demonstrate "substantial similarity."

There is insufficient information to compare pace and dialogue. *PETS* did not include dialogue. By comparison, *Animal Practice* was fully developed into a television show with distinctive pace and scripted dialogue.

### 2. Characters

As stated above, the generic idea to have veterinarians, nurses, and pets, is not copyrightable. *See Zella*, 529 F.Supp.2d at 1137 ("the generic idea to have a host is not protectable"). Additionally, when comparing the characters, the Court finds meaningful differences.

Plaintiff alleges that the only difference between the two lead veterinarian doctors, Dr. Weber in *PETS* and Dr. Coleman in *Animal Practice* is gender. Beyond being male, Dr. Coleman is middle-aged, is somewhat of a womanizer, and has a self-important attitude. (Dkt. No. 12 at 17.) In contrast, Dr. Weber is described as a "beautiful young" woman who took the job at the after-hours clinic "so she could keep her days free to work with a non-profit animal protection group she founded." (Dkt. No. 13-1 at 4.)

There are two other veterinarians in *Animal Practice* that are absent in *PETS*, Dr. Jackson and Dr. Yamamoto. *Animal Practice* character Dr. Jackson shares a few characteristics with his alleged *PETS* counterpart, Cooper. Both characters lack a dating prowess and occupy the role of best friend to the lead character; however, there are more differences than similarities. Dr. Jackson is an extremely friendly veterinarian who defined by his Colorado upbringing. (Dkt. No. 13, Episode #01004.) On the other hand, Cooper is a veterinary assistant who is defined by his social awkwardness. (Dkt. No. 13-1 at 5.)

*Animal Practice's* Dr. Yamamoto also differs from Cooper and Dr. Weber in *PETS*. Dr. Yamamoto is depicted as a goofy man lacking in self-awareness, who copes with a divorce from his wife by partying and gambling. (Dkt. No. 12 at 12.) Plaintiff argues that Alex Ruiz, who he describes as a "the smart ethnic character" is embodied in Dr. Yamamoto "a brilliant Asian veterinarian" who like Ruiz serves as a "comic foil for the staff at the clinic." (Dkt. No. 18 at 14.) Being smart and ethnic are not protectable

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-10077 BRO (CWx) | Date | September 6, 2013 |
|---|---|---|---|
| Title | DuckHole Inc. v. NBC Universal Media LLC et al | | |

elements. The expression of these ideas through Yamamoto and Ruiz fail the "substantial similarity" test.

Finally, the idea for a "resident pet" is not an original copyrightable element. General character types are not protectable by copyright. *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999). Further, the two expressions of that idea are unique. One embodiment is the capuchin monkey that dresses in medical scrubs and a suit and assists Dr. Coleman by retrieving instruments. The other consists of a dog that eats chocolate and is depicted as Dr. Weber's best friend. The remaining characters are distinct and do not indicate that Defendants have committed copyright infringement.

Each factor in the "extrinsic test" militates so strongly in Defendants' favor that no reasonable jury could conclude that the treatment of *PETS* and *Animal Practice* are substantially similar.

**VI. Conclusion**

For the foregoing reasons, Defendant's Motion is **GRANTED** and the FAC is dismissed **WITH PREJUDICE**. The Court finds that no amendment could cure its deficiencies. *See Manzarek*, 519 F.3d at 1031.

**IT IS SO ORDERED.**

|  | Initials of Preparer | : rf |
|---|---|---|